**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DENEEN MARIE DAVIS,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 12-CV-4039** |
| **v.** | : | |
| | : | |
| **MICHAEL J. ASTRUE, COMMISSIONER** | : | |
| **OF SOCIAL SECURITY,** | : | |
| **Defendant.** | : | |

**REPORT AND RECOMMENDATION**

**LYNNE A. SITARSKI**                                      **DATE: January 23, 2014**
**UNITED STATES MAGISTRATE JUDGE**


I.       **INTRODUCTION**

        This action was brought pursuant to 42 U.S.C. § 405(g) to review the final decision of the

Commissioner of Social Security ("Commissioner") denying the claims of Deneen Marie Davis

("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security

Act, 42 U.S.C. §§ 401-433, 1381-1383f ("SSA").  Plaintiff has filed a request for review of the

final decision of the Commissioner.  Defendant has filed a response, and Plaintiff filed a Reply.

The matter is before me for a Report and Recommendation.  For the reasons set forth below, I

respectfully recommend that this action be **REMANDED** for further proceedings consistent with

this Report and Recommendation.


II.      **FACTUAL AND PROCEDURAL HISTORY**

        Plaintiff was born on December 16, 1967, and was 40 years old on the alleged disability

onset date.  (R. 123.)  She has a high school education, and has past relevant work as a janitor, a

"collector," an insurance representative, and a security officer.  (R. 24.)

Plaintiff filed an initial application for disability benefits on April 22, 2009, alleging that she has been disabled since November 26, 2008.  (R. 123.)  On July 28, 2009, Plaintiff amended her alleged onset date to November 20, 2008.  (R. 135.)  Plaintiff's claim was initially denied on July 27, 2009, and also upon reconsideration on November 6, 2009.  (R. 16.)  On November 23, 2009, Plaintiff filed a written request for a hearing before an administrative law judge ("ALJ"), and on August 25, 2010, an ALJ held a hearing (the "Hearing").  (*Id.*)  At the Hearing, Plaintiff was represented by counsel, and her husband, Timothy Davis, testified on her behalf.  (*Id.*)  A vocational expert ("VE") also appeared and testified.  (*Id.*)

In a decision dated August 30, 2010, the ALJ found that Plaintiff was not disabled within the meaning of the SSA since the alleged onset date, November 20, 2008.  (R. 25.)  The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a significant number of jobs in the economy.  (*Id.*)  Plaintiff's request for review by the Appeals Council was denied on May 23, 2012.  (R. 1.)  The ALJ's decision thus became the final decision of the Commissioner.  Plaintiff brought this civil action on July 16, 2012, seeking judicial review of the ALJ's decision.  (ECF No. 1 (Compl.)); *see* 42 U.S.C. § 405(g).  This matter was referred to this Magistrate Judge for preparation of a Report and Recommendation.  (ECF No. 11 (Referral Order).)


III.   STANDARD OF REVIEW

Under the SSA, a claimant is disabled if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than twelve (12) months."  42

U.S.C. § 423(d)(1); 20 C.F.R. §§ 404.1505, 416.905.  A five-step sequential analysis is used to

evaluate a disability claim.[1]  The claimant bears the burden of establishing steps one through

four, and then the burden shifts to the Commissioner at the fifth step to establish that the

claimant is capable of performing other jobs in the national economy, in light of his or her age,

education, work experience and residual functional capacity.  *Poulos v. Comm'r. of Soc. Sec.*,

474 F.3d 88, 92 (3d Cir. 2007).

      Judicial review of a final decision of the Commissioner is limited.  The District Court is

bound by the factual findings of the Commissioner if they are supported by substantial evidence

and decided according to correct legal standards.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir.

2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Allen v. Bowen*, 881 F.2d 37, 39 (3d

Cir. 1989); *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984).  Substantial evidence is "more

than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as

---

[1]  The steps are as follows:

First, the Commissioner considers whether the claimant is currently engaged in
substantial gainful activity.  If he [or she] is not, then the Commissioner considers
in the second step whether the claimant has a "severe impairment" that
significantly limits his [or her] physical or mental ability to perform basic work
activities.  If the claimant suffers a severe impairment, the third inquiry is
whether, based on the medical evidence, the impairment meets the criteria of the
impairment listed in the "listing of impairments," . . . which result in a
presumption of disability, or whether the claimant retains the capacity for work.
If the impairment does not meet the criteria for a listed impairment, then the
Commissioner assesses in the fourth step whether, despite the severe impairment,
the claimant has the residual functional capacity to perform his [or her] past work.
If the claimant cannot perform his [or her] past work, then the final step is to
determine whether there is other work in the national economy that the claimant
can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520, 416.920.

adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (*citing Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).  Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).  The court has plenary review of legal issues.  *Schaudeck v. Comm'r. of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999) (*citing* 42 U.S.C. § 405(g)).

## IV.    DISCUSSION

Plaintiff's alleged impairment involves status post fractured left humerus, migraine headaches, and depression.  (R. 18.)  The ALJ proceeded through the sequential evaluation process and found that Plaintiff was not disabled due to her impairments.  (R. 25.)  By decision dated August 30, 2010, the ALJ found:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.  The claimant has not engaged in substantial gainful activity since November 20, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: status post fractured left humerus; migraine headaches; and depression (20 CFR 404.1520(c)).

. . . .

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

. . . .

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except she can lift and carry no more than 10 pounds

4

frequently and 20 pounds occasionally with the dominant right arm/hand and 5 pounds occasionally with the non-dominant left arm/hand; and she cannot perform overhead tasks.  She has no difficulty with walking, standing or sitting. From a mental standpoint, she is limited to simple, repetitive, non-production oriented, 1-, 2-, and 3-step tasks not involving frequent interaction with the public.

    . . . .

 6.  The claimant is unable to perform any past relevant work.  (20 CFR 404.1565).

    . . . .

7.  The claimant was born on December 16, 1967 and was 40 years old, which is defined as a young individual age 18-49, on the alleged disaiblity onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

    . . . .

11.  The claimant has not been under a disability, as defined in the Social Security Act, from November 20, 2008, through the date of this decision (20 CFR 404.1520(g)).

(R. 18-25.)  Thus, the ALJ reached step five of the five-step sequential evaluation and found that

Plaintiff was not disabled.  (R. 25.)

      Plaintiff contends that the record demonstrates that she is disabled, and that the ALJ's

decision regarding her RFC is not supported by substantial evidence.  Plaintiff specifically

argues that the ALJ failed to: (A) evaluate a treating physician's opinion that Plaintiff's ability to use her left arm in a work environment is severely impaired; (B) address a treating nurse practitioner's opinion regarding Plaintiff's "non-exertional" limitations; (C) discuss Plaintiff's own testimony in evaluating credibility; (D) mention Plaintiff's husband's testimony in evaluating credibility; and (E) consider how Plaintiff's impairments in combination affect her. (ECF No. 8 (Pl.'s Br.) at 1.)  In my review of these claims, I considered the parties' submissions and the record, which includes medical evidence, the Hearing testimony, and the ALJ's decision.

### A.      Primary Care Physician's Opinion Regarding Plaintiff's Arm

Plaintiff argues that the ALJ did not properly evaluate Dr. Mary A. Yuengert's ("Yuengert") medical opinions of Plaintiff's condition.  (ECF No. 8 at 7-10.)  Specifically, Plaintiff states that "we are left in the dark as to what, if any, weight the ALJ gave treating physician, Dr. Yuengert's opinion, because the ALJ failed to mention or evaluate same."  (*Id.* at 7.)  The Commissioner responds that ALJ's decision to reject Yuengert's opinion without explanation is appropriate, because: the record does not support Yuengert's findings, and the restriction that the ALJ incorporated in Plaintiff's RFC "gave Plaintiff the benefit of the doubt" and was supported by physical therapy notes; Yuengert saw Plaintiff four times and none of those visits provide objective evidence to support Yuengert's restriction; other sources, including Plaintiff's own self-reporting statement, provide evidence that contradicts Yuengert's restriction; the VE testified that imposing a stricter lifting limitation to two pounds would eliminate only one of the three potential identified jobs that Plaintiff could perform; and according to relevant regulations, the VE, who testified that Plaintiff could perform various jobs, is an appropriate source for determining the effect of a claimant's limitations.  (ECF No. 9 at 4-9.)

6

As explained by the Third Circuit, "an ALJ may reject outright the opinions of a treating physician only on the basis of contradictory medical evidence, but may afford a treating physician's more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429 (*citing Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Id.* at 429 (*quoting Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). "The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." *Id.* (*citing Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983)).[2]

Yuengert's treatment of Plaintiff spanned more than a year. (*See* R. 344, 376, 434-35, 444-45.) On a medical record related to a April 19, 2009 visit, Yuengert wrote that: "[Plaintiff] [p]resents to obtain referral to Neurology for FU of her migraine headaches. Is not having any trouble right now but has a routine appointment scheduled for next week." (R. 344.) On December 15, 2009, Yuengert wrote a medical record stating that Plaintiff had appeared for a dry cough. (R. 376.) On January 14, 2010, Yuengert, completed a "Physical Capacities Evaluation" for Plaintiff in which she noted that Plaintiff: could not use her left hand for "Simple Grasping,"

---

[2]  The Third Circuit has instructed that a treating physician's opinion on the nature and severity of an impairment will be given controlling weight only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record. *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) If a treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less-than controlling weight or even reject it, so long as the ALJ clearly explains her reasons and makes a clear record. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). An ALJ may not reject the treating physician's assessment due to her own "credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted).

"Pushing & Pulling," "Fine Manipulation" or repetitive tasks; could not "lift/grip" with her left

hand; and could not reach above her shoulder level with her left arm.  (R. 434-35, 445-50.)

Nevertheless, Yuengert observed that Plaintiff's pain was not so "disabling" as to prevent her

"from working full time at even a sedentary position."  (*Id.* at 436.)  On May 14, 2010, Yuengert

wrote as follows in the medical record:

> Presents to have disability forms completed on the bases of chronic, left shoulder
> and arm pain, and possible reflex sympathetic dystrophy following a humeral
> fracture in November 2008.  Followed by Dr. Kean for pain, a psychiatrist for
> depression, and Dr. Singh for migraines.  None of them would complete the forms
> for her.  Not able to use the left arm, reach, or type for more than 10 minutes due
> to difficulty in positioning the left arm.  (-CAR)

(R. 444.)

The ALJ found that Plaintiff has the RFC to perform light work.  (R. 23.)  The ALJ

determined that Plaintiff was not credible regarding her impairments' severity, and noted that,

according to the state consultant, Plaintiff was able to perform a range of light work.  (R. 21.)

The ALJ stated that physical therapy notes indicate that Plaintiff's fracture had healed, she has a

grip strength of five pounds in her left hand and her range of motion exhibited 160 degrees

forward flexion.  (R. 22.)  Examining records from Dr. Trinity Pilkington and Dr. Daniel Kean,

the ALJ determined that:

> Overall, the record reflects that the claimant has been prescribed and has taken
> appropriate medications for her alleged impairments.  The medical records reveal
> that the medications have been relatively effective in controlling her symptoms.
> She complains of nerve damage resulting from her arm fracture, but there is no
> evidence of such condition.  On the other hand, the evidence does demonstrate
> that she experiences residual pain, tenderness, weakness, and restricted range of
> motion of the left upper extremity related to the humerus fracture, limiting her
> abilities to perform daily activities, as she described.  However, she is right hand
> dominant and remains capable of performing non-strenuous activities.  The
> overall record also confirms that the claimant has occasional migraine headaches,

despite taking medications as prescribed.  However, she remains neurologically intact with no evidence of visual disturbance.

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except she can lift and carry no more than 10 pounds frequently and 20 pounds occasionally with the dominant right arm/hand and 5 pounds occasionally with the left non-dominant arm/hand.  She cannot perform overhead tasks.  She has no difficulty with walking, standing or sitting.  Giving the claimant the benefit of doubt, based on the recent report from Mary Edwards, APRN, I find that from a mental standpoint, she is limited to simple, repetitive, non-production oriented, 1-, 2-, and 3-step tasks not involving frequent interaction with the public.

(R. 23-24.)  The ALJ neither considered Yuengert's opinion, nor offered an explanation for rejecting it.  (*See id.*)

The Commissioner's arguments are unpersuasive, because the Commissioner provides no legal authority for the proposition that the ALJ could <u>without explanation</u> ignore Yuengert's opinion. (*Id.*)  The Commissioner raised arguments that potentially could have convinced the ALJ to reject or discount Yuengert's opinion.[3]  Yet, I cannot so conclude here, because the ALJ has not explained the reasons for rejecting Yuengert's opinion, as is required under *Plummer.* *See* 186 F.3d at 429.  Given this, I cannot conclude that the ALJ appropriately considered that testimony.

Accordingly, I respectfully recommend that this matter be remanded so that the ALJ can discuss Yuengert's assessment of Plaintiff's condition.

**B.     Treating Nurse's Opinion Regarding Plaintiff's Mental Health**

---

[3] Even if the Commissioner's arguments are factually true, the Commissioner provides no support for any conclusion that the ALJ may ignore treating physician testimony without explanation.  (*See* ECF No. 9 at 4-9.)  Because the arguments are not directed to this key legal issue, I see no reason to discuss them in detail.

Plaintiff argues that the ALJ failed to indicate the weight afforded to Nurse Mary Edwards' ("Edwards") opinion. (ECF No. 8 at 14.) In Plaintiff's view, Edwards opined that Plaintiff is significantly impaired due to psychological impairments, and that such opinion finds support in Edwards' objective clinical findings and elsewhere in the record. (*Id.*) Plaintiff argues that Edwards constitutes an important source for determining Plaintiff's impairment and RFC. (R. 13.) Plaintiff also argues that the ALJ failed to indicate a reason for rejecting portions of Edwards' testimony. (R. 12.) Defendant responds that the ALJ properly presented all of Plaintiff's limitations, and did not ignore evidence. (ECF No. 9 at 1 & 8.) Defendant also asserts that Edwards' assessment of Plaintiff was flawed, because: (i) it was internally inconsistent (ECF No. 9 at 10); (ii) any evidence of Plaintiff having a mental limitation was due to "an anomalous flare-up in Plaintiff's mental condition" (*id.* at 11); and (iii) Edwards' assessment was inconsistent with the record as a whole (*id.* at 12).[4]

Edwards worked for Plaintiff's psychiatrist, Dr. Evelyn Arboleda ("Arboleda"), and evaluated Plaintiff nine times. (*See* R. 387-94, 430-31, 456-63.)[5] On a September 1, 2009 Initial Evaluation, Edwards took notes on Plaintiff's statements regarding her own medical history. Plaintiff reported that feelings of depression had started a couple of weeks or months before the visit; that she felt like she was in a "black hole;" that she started having crying episodes the previous November; and that she was afraid to drive long distances. (R. 387.) Edwards made the following reports on Plaintiff's mood: September 22nd "Normal"; October 23rd, "Normal;"

_____

[4] The Commissioner also claims that the ALJ adopted more stringent limitations than those that Plaintiff described. (ECF No. 9 at 12.)

[5] Dr. Arboleda co-signed Edwards' evaluations that were conducted on June 2, 2010. (R. 456-63.)

November 20th, "Better;"  December 21st, 2009, "Normal;" and February 15, 2010, "Better." (R. 390-95.)  On May 11th and June 8th, 2010, Edwards noted that Plaintiff was both depressed and irritable.  (R. 430-31.)  Edwards made no observations on how Plaintiff's alleged issues impacted her RFC.  (*See* R 390-95, 430-31.)

In a June 2, 2010 assessment (the "June Assessment"), Edwards identified Plaintiff as having anxiety and a "Disturbance of mood, accompanied by a full or partial manic or depressive syndrome" and that this disturbance makes it extremely difficult for her to function in social situations.  (R. 456-60).  Edwards noted that Plaintiff did not have symptoms that would make her completely unable to function independently outside of her home.  (R. 458).  Edwards determined that Plaintiff's mental issues "Markedly Limited" Plaintiff's ability to function with respect to her: "ability to understand and remember detailed instructions;" "ability to carry out detailed instructions;" "ability to work in coordination with or proximity to others without being distracted by them;" "ability to interact appropriately with the general public;" "ability to accept instructions and respond appropriately to criticism from supervisors;" and "ability to travel in unfamiliar places or use public transportation."  (R. 461-63.)

Based on the June Assessment, the ALJ found that from a mental standpoint, Plaintiff's RFC is "limited to simple, repetitive, non-production oriented, 1-, 2-, and 3-step tasks not involving frequent interaction with the public."  (R. 24.)

Social Security Administration regulations govern which medical providers may offer evidence to establish an impairment.  *See* 20 C.F.R. § 404.1513.  The regulations state that the Social Security Administration "need[s] evidence from acceptable medical sources to establish whether [a claimant has] a medically determinable impairment(s)."  20 C.F.R. § 404.1513(a).

Nurse-practitioners are not considered to be an acceptable medical source, and are instead identified as "other sources."  20 C.F.R. § 404.1513(d)(1).  A claimant's benefit eligibility cannot solely rest upon the opinion of an "other source:"

> Information from these "other sources" cannot establish the existence of a medically determinable impairment.  Instead, there must be evidence from an "acceptable medical source" for this purpose.  However, information from such "other source" may be based on special knowledge of the individual and may provide insight into the severity of the impairment and how it affects the individual's ability to function.

SSR 06-03P, 2006 WL 2329939, at *2 (S.S.A. August 9, 2006).  Thus, an ALJ may consider another source's opinion "along with all other evidence insofar as it is deemed relevant to assessing a claimant's disability."  *Hartranft v. Apfel*, 181 F.3d 358, 361 (3d Cir. 1999).

The ALJ credited Edwards' opinion referring to the June Assessment (*see* R. 456-63), and adopting the functional limitations identified therein (*compare* R. 456-63, *with* R. 24).[6]  Moreover, Plaintiff concedes that Edwards is not an "acceptable medical source" that would establish an impairment.  (*See* ECF No. 8 at 13.)

Although the ALJ incorporated the June Assessment, Plaintiff complains that the ALJ failed to properly credit to Edwards' other clinical evaluations (ECF No. 8 at 12 (citing R. 387-94, 430-31)).  Plaintiff cites Edwards' other evaluations, but fails to specifically identify the limitation that the ALJ failed to incorporate (*see id.*).  Having reviewed those materials, I note

---

[6]  Plaintiff asserts that "The ALJ is unclear what 'report' he is referring to.  The ALJ did not mention that Nurse Edwards completed a questionnaire on June 2, 2010."  (ECF No. 8 at 12.) Plaintiff does not identify any other report prepared by Edwards which identifies functional limitations.  (*See id.*)  Plaintiff also asserts that the ALJ did not mention, let alone discuss, any of the limitations identified by Edwards.  (*Id.*)  Plaintiff's statement is not true.  Comparing the June Assessment with the ALJ's decision shows that the ALJ incorporated Edwards' functional limitations.  (*Compare* R. 456-63, *with* R. 24).

that Edwards did not describe how Plaintiff's medical issues affected her functionality (*see* R. 387-94, 430-31).  Plaintiff appears to inappropriately rely on those evaluations to establish the existence of an impairment.  *See id*.[7]

Plaintiff argues that the ALJ erred by not stating his reason for "why he rejected Nurse Edwards' questionnaire findings demonstrating evidence of disability . . . ."  (ECF No. 8 at 12.) Importantly, the Third Circuit has recognized that an ALJ is not even required to consider a nurse's opinion "at all," because a nurse is not an acceptable medical source pursuant to 20 CFR § 404.1513(a).  *Chandler v. Commissioner of Social Sec.*, 667 F.3d 356, 361-62 (3d Cir. 2012) ("Instead, the ALJ found persuasive and incorporated DeWees's opinion that Chandler cannot sit for more than thirty minutes at a time, even though the ALJ was not required to consider DeWee''s opinion at all because, as a nurse practitioner, she is not an "acceptable medical source[ ]."  (*citing* 20 C.F.R. § 404.1513(a))).  Therefore, the ALJ was not obligated to explain why he rejected Edwards' findings regarding the existence of impairments.

### C.    Plaintiff's Credibility Regarding Pain and Alleged Impairments

Plaintiff argues that the ALJ failed to evaluate Plaintiff's evidence (testimony) other than written statements, and find Plaintiff entirely credible regarding her symptoms.  (ECF No. 8 at 15.)  According to Plaintiff, the ALJ erred in failing to: explain his findings, base his findings on

---

[7] Plaintiff relies on Edwards' June Assessment to identify limitations that Plaintiff appears to claim were ignored by the ALJ.  For example, Plaintiff states that Edwards identified Plaintiff as suffering from "depression with anhedonia, sleep disturbance, decreased energy, and difficulty concentrating or thinking" and that "[e]ven a minimal increase in mental demands or change in environment would likely cause decompensation."  (ECF No. 8 at 11.)  After citing these factors, Edwards identified Plaintiff's functional limitations.  (R. 461-63.)  Thus, Edwards contemplated these symptoms in defining Plaintiff's functional limitations.  (*See supra*.)

evidence, and carefully consider her statements.  (*Id.* at 16.)  Plaintiff also claims that evidence

supports her testimony.  (*Id.* at 17.)  Defendant responds that evidence undermines Plaintiff's

credibility, and that the ALJ evaluated the medical records, testimony and other evidence in

detail.  (ECF No. 9 at 14.)

At the Hearing, Plaintiff testified how her pain impacted her RFC.  (R.35-47.)  She stated

that she is unable to lift anything past a "certain amount," and specifically identified problems

with vacuuming, opening jars, doing the wash, cooking, making the bed, putting her clothes on,

and fixing her hair.  (R. 36 & 38.)  In attempting to do certain activities, Plaintiff said that she

encounters pain (R. 36), and she prefers to keep her left hand in a pocket hanging on her shirt (R.

37).  She stated that some days she can walk, watch T.V., attend church (albeit not to the extent

that she did before her accident), drive (albeit not to the extent that she did before her accident),

shop (with someone), lift less than two pounds, and attend physical therapy.  (R. 38-40.)  She

claimed that every two days she has migraine headaches, which typically last all day (R. 40-41),

and prevent her from functioning, because her medicine causes her to sleep for four to five hours

(R. 42).  Plaintiff also claims that she has problems with sleeping, depression, anxiety, and panic

attacks, and becomes upset when she realizes how her impairments prevent her from doing

certain things.  (R. 44-45.)  Plaintiff explained that she receives help from her husband, neighbor,

and adult children in performing activities around her house.  (R. 46.)

In assessing Plaintiff's credibility, the ALJ wrote:

The claimant alleges disability beginning November 20, 2008 because of a broken
left arm, left arm nerve damage, and migraine headaches.  She reported that she is
unable to lift anything or use her left arm, and that she has limited mobility of the
arm.  She alleges that she is in constant pain, which is somewhat alleviated by
medication; however, the medication leaves her lightheaded and too tired to do
anything besides lay down to rest (Ex. 2E).  Due to persistent left shoulder and

left arm pain, she reported, she has difficulty reaching with her left arm, carrying objects, gripping with her left hand, balancing, bending, kneeling and squatting. Consequently, she is having difficulty with dressing and grooming, cooking, opening packages, driving, shopping performing household chores, and sleeping. She must rely on her husband for assistance with these tasks (Ex. 9E).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.  In assessing the credibility of the claimant's statements regarding her symptoms and their effects on her functioning, her medical history, the character of her symptoms, the type of treatment she received, and her response to treatment were considered.

(R. 21.)

The ALJ is required to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which she is disabled by it.  *See* 20 C.F.R. § 416.929(c).  The ALJ may reject testimony of subjective complaints where it is not consistent with the objective medical evidence.  *See Burns v. Barnhart*, 312 F.3d 113, 130-31 (3d Cir. 2002).

The ALJ adequately acknowledged Plaintiff's testimony and identified how it was inconsistent with medical evidence.  The ALJ summarized Plaintiff's Hearing testimony and found her to be not entirely credible.  (R. 21.)  Next, the ALJ reviewed her medical history identifying factors that conflicted with the testimony.  (*See* R. 21-23.)  For example, physical therapy notes show that she has a grip strength of five pounds, stronger than what she reported. (R. 22; *see also* R. 337 (physical therapy note reporting Plaintiff's left hand grip strength at five pounds).)[8]  Additionally, on June 2, 2010,  Dr. Singh noted that she did "not report headache,

---

[8]  A physical therapy note identifies left hand grip strength at ten pounds.  (R. 406 (objective box for May 18, 2010 (noting left hand grip strength at ten pounds)); 407 (physical therapy note reporting Plaintiff's grip strength at ten pounds).)

15

double vision, dizziness, difficulty talking or swallowing, or weakness of the arms and legs as

this time." (R. 429.) Additionally, Dr. Singh reported, Plaintiff's medication for headaches

"seems to be working well" and "her headaches are better." (*Id.*) Furthermore, Edwards'

evaluations stated that Plaintiff was neither suicidal nor homicidal; she was not suffering from

perceptual delusions; and Plaintiff had normal speech patterns, thought process, and cognition.

(R. 388 & 431.)

In sum, the ALJ examined Plaintiff's testimony against other evidence and found her to

be not entirely credible. (R. 21.) Given the conflict between Plaintiff's testimony and the other

medical evidence, the ALJ did not err in not giving full credit to her testimony.

### D.      Husband's Credibility Regarding Plaintiff's Functionality

Plaintiff argues that the ALJ failed to discuss her husband's testimony. (ECF No. 8 at

15.) The Commissioner asserts that he provided little to no first-hand information, and he only

described symptoms relayed to him by Plaintiff. (ECF No. 9 at 15.) According to the

Commissioner, the ALJ accounted for his testimony in addressing Plaintiff's pain issues in the

RFC assessment. (*Id.* at 15-16.)

At the Hearing, Timothy Davis testified. (*See* R. 47-51.) He stated that Plaintiff does not

do much cooking or cleaning, and that he and a neighbor provide help Plaintiff. (R. 48.) He also

testified, in relevant part:

> Q      Okay.   What have you noticed since the incident?  I know this is not a
> workmans' comp case, but how often do you observe her having migraines?
>
> A      It's complicated now, because with the mood swings, the depression, I
> can't distinguish if it's just the migraine or a just a combination of all.
>
> Q      Okay

A       So, you know, socially has impacted her, where she could - - We used to have a lot of cookouts, a lot of fish fries, and a lot of people coming over.  We don't do any of that now.

Q       Okay.  So, it has impacted your social life?

A       Right.

Q       How about as far as when you are off work, how much time do you see her actually spending in the bed, either because of the migraines or the psychological issues?

A       She spends a lot of time just to herself, you know, maybe in and out of bed.  You know, I, kind of, move in my own room, so she can have her own space, because of the mood swings and the anxiety attacks, I don't want to add to it.  When I come home from work [INAUDIBLE] I can't do this.  So, you know, it's kind of like let her have her own space.  Whatever needs to be done, I just come home and do it.

                    . . . .

Q       . . . How often do you see that where she is having these types of [mood swings or problems?]

A       Depending on what kind of pressure you put on her.  If you question her, you know she used to be the pillar of the house.  The family would come over and we talk and help her.  She can't handle too much pressure, questioning or, you know, I didn't try to put her in a situation where you are putting pressure on her.  If you put pressure on her, she gets emotional.  You know, I explained and tried to ask her about her pain, you know, where is it hurting you?  And, it was kind of like I questioning her.  Like, I feel the pain, I can't do this, I can't do that.  I said, "okay," I understand.  I can't see it, you know.

Q       Okay.  What do you observe as being the main problem keeping her from doing any kind of real light sitting type of work?

A       The pain, trying to figure out what created the pain, you know.  I try to work with her.  I try to duplicate what makes the pain come and you just don't do that.  You know, this is inconsistent of what brings the pain on.  I mean because she was so independent, she gets frustrated, because now she can't do things she used to do.  The strength comes and goes.  The pain comes and goes.  You know, sometimes it is heat-sensitive.  Certain things set her off.  She tries to push herself.  It hurts and then it leads into other things.  You know, she gets frustrated, because she can't function independently like she used to.

17

(R. 49-51.)

The ALJ must "explicitly" weigh all relevant, probative and available evidence. *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979). Only where the ALJ rejects conflicting probative evidence must the ALJ explain his findings and the reasoning for his conclusions. *Walker v. Comm'r of Soc. Sec.*, 61 F. Appx. 787, 788-89 (3d Cir. 2003). In *Cerar v. Secretary of the DHHS*, the court addressed the ALJ's failure to address the credibility of a claimant's spouse:

> It is true that the ALJ failed to address the credibility of the claimant's husband explicitly, but this alone would not require remand, because the ALJ demonstrated he considered and analyzed all the medical evidence and plaintiff's subjective testimony concerning pain. The plaintiff's testimony was credited by the ALJ to the extent consistent with medical testimony; crediting the husband's testimony corroborating the plaintiff's would not have affected the ALJ's decision.

1995 WL 44551, at *4 (E.D. Pa. Feb.1, 1995) (unpublished).

Having already examined Plaintiff's testimony, the ALJ was under no obligation to credit Mr. Davis' testimony. At the Hearing, Plaintiff's attorney acknowledged that he "probably would pretty much just reiterate, though what [Plaintiff] is saying." (R. 47.) Additionally, the attorney observed that he did not think that the testimony would be "too cumulative." (*Id.*) Comparing the testimony to Plaintiff's own testimony, I find that Mr. Davis offers no additional insight on Plaintiff's condition or functionality. (*Compare* R. 47-51 *with* R. 35-46.) He provided additional information regarding the fact that when Plaintiff is suffering from the "combination of all" symptoms, it is indistinguishable from her migraine headaches; her impairments have affected their social lives; and  he gives Plaintiff substantial time to herself. (R. 49.) Yet, this testimony provides no insight into Plaintiff's RFC.

18

His testimony is superfluous to Plaintiff's own testimony.  She described how certain activities lead to pain, and how she cries due to her inability to do things for herself.  (*See* R. 36 & 45.)  He testified that she exerts herself which "leads into other things," and that she gets "frustrated" because she is dependent on others (ECF No. 8 at 17), but, given her own testimony, he offers no new insight into her condition.  The ALJ demonstrated that he considered the medical evidence and Plaintiff's testimony, and that he credited such testimony to the extent it was consistent with medical evidence.  Accordingly, the ALJ did not err in not giving credit to his duplicative testimony.

### E.     The Combined Impact of Plaintiff's Impairments

Plaintiff argues that the ALJ did not consider the combined impact of her impairments. (ECF No. 8 at 18.)  Plaintiff relies on Mr. Davis' testimony to demonstrate that, in combination, her impairments were disabling.  (*Id.* at 19.)  In response, the Commissioner claims that the ALJ evaluated the combined impact of the impairments (ECF No. 9 at 17), and that Plaintiff does not identify how the ALJ failed to make such a consideration  (*id.* at 18-19).  Moreover, the Commissioner asserts that even if the ALJ failed to evaluate an impairment, Plaintiff has not identified how the ALJ's decision would have been altered.  (*Id.* at 18.)

An ALJ must consider whether all of the plaintiff's impairments collectively meet or equal the severity of a Listed Impairment.  *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d Cir .2009) (*citing* 20 CFR §§ 404.1520(d) & 416.920(d); 42 U.S.C. § 423(d)(2)(C) ("In determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.")).

The ALJ discussed the cumulative impact of Plaintiff's impairments.  After separately discussing each of Plaintiff's impairments in separate paragraphs of his decision, the ALJ in a single paragraph collectively evaluated all the impairments.  (R. 22-23 (*see supra at* III.A).)  The ALJ examined her issues in combination; for example, he observed that medications have been useful in controlling her symptoms.  (*See.* R. 23.)  He also acknowledged that her depression arose out of her arm problems.  (R. 22.)

Furthermore, in defining the RFC, the ALJ considered her impairments in combination. The ALJ found that Plaintiff had an RFC that allowed her to perform light work.  (R. 23.) Regardless, he took into consideration her arm problems by setting lifting limitations, and her migraines and mental health issues by limiting her to a "simple, repetitive, non-production oriented" tasks that did not involve frequent interaction with the public.  (*See* R. 24.)

The Third Circuit has held that where an ALJ considers a claimant's impairments in combination, such as by presenting a VE with a hypothetical that incorporates each impairment, the ALJ has adequately accounted for the combined effect of the impairments.  *See Williams v. Barnhart*, 87 Fed. Appx. 240, 242-43 (3d Cir. 2004) (holding that ALJ considered combined effect of impairments where ALJ's hypothetical question to vocational expert included limitations based on each of claimant's impairments); *Turby v. Barnhart*, 54 Fed. Appx. 118, 123 (3d Cir. 2002) (holding that ALJ properly considered combination of claimant's ailments where ALJ discussed wide range of limitations and explicitly included range of impairments in hypothetical posed to VE).  The ALJ presented the aforementioned RFC with the limitations addressing Plaintiff's impairments to the VE.  (R. 24-25.)  Thus, the ALJ considered the combined effect of Plaintiff's impairments.

Plaintiff's reliance on her husband's testimony to show the combined impairments'
impact fails to show that the ALJ did not adequately consider those ailments in combination.  As
the Commissioner observed, Plaintiff does not identify what finding that ALJ should have made,
or why her medical issues in combination were disabling.  (*See* R. 18.)  She cites her husband's
statements to show that the ALJ failed to examine these issues in combination.  (*See* ECF No. at
19.)  However, I conclude that Mr. Davis' testimony does not establish that, in combination, her
impairments were disabling.  He admitted his own confusion in distinguishing between a
migraine headache and her ailments in combination (R. 29), demonstrating that the combination
of ailments was in his view akin to a migraine - not that such combination had a greater impact
on her RFC.  He refers to a diminished social life, but does not explain how the combination of
symptoms affected their social lives, and he does not clearly identify the cause as a combination
of symptoms, as opposed to migraine headaches alone.  (*See id.*)  He highlights that Plaintiff
needs "her own space" due to  her mood swings and anxiety attacks (R. 49), and that too much
pressure causes her mood swings (R. 50).  Yet, he does not attribute her isolation or her
moodiness to her combined impairments - as opposed to mental health issues alone.  (*See* R. 49-
50.)  He states that she has complained of pain and being unable to do things (R. 50), but again
he fails to link the combined impairments to causing her pain or preventing her from acting (*see
id.*).  He observed that when Plaintiff exerts herself she encounters pain which leads to
frustration (R.51), but he provides no insight into the combined impact of the impairments.[9]

---

[9]  Plaintiff elaborated that she confronts pain when she moves her arm past a certain
point, and attributes her frustration to encountering lifting limitations that prevent her from doing
things.  (R. 35-36.)  In this context, Mr. Davis' statement describes Plaintiff's arm issues.

Accordingly, I conclude that the ALJ's treatment of Plaintiff's husband's testimony was reasonable.

**V.      CONCLUSION**

For all the foregoing reasons, I respectfully **RECOMMEND** that this action be **REMANDED** for further proceedings consistent with this Report and Recommendation.

Therefore, I make the following:

**<u>RECOMMENDATION</u>**

**AND NOW**, this __23rd__ day of January, 2014, **IT IS RESPECTFULLY RECOMMENDED** that this action be **REMANDED** for further proceedings consistent with this Report and Recommendation.

Petitioner may file objections to this Report and Recommendation.  *See* E.D. Pa. Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:


   /s/ Lynne A. Sitarski                                

LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE

23